## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**RICHARD A STEVENS**, and
**MARY A STEVENS**,

Debtors.

Case No.  **05-62678-7**

## *MEMORANDUM of DECISION*

At Butte in said District this 19th day of July, 2007.

In this Chapter 7 bankruptcy, after due notice, the Court held a hearing on July 10, 2007, in Butte on the Second Retroactive Application to Approve Employment of Professionals Century 21 Heritage Realty, Inc., Christie Killeen, Ann Ford and Cindy Stevick (collectively referred to as "Century 21") filed by Century 21 on May 24, 2007, and on the Second Retroactive Application for Professional Fees and Costs also filed by Century 21 on May 24, 2007.  Attorney Timothy C. Fox of Helena, Montana, appeared at the hearing on behalf of Century 21, both Debtors Richard Stevens ("Richard") and Mary Stevens ("Mary") testified in support of Century 21's Second Retroactive Application to Approve Employment of Professionals and Century 21's Second Retroactive Application for Professional Fees and Costs, and Century 21's Exhibit C was admitted into evidence without objection.  Interestingly, attorneys R. Clifton Caughron ("Caughron") and Stephen R. McCue ("McCue"), both of Helena, Montana, who have to date,

1

been Debtors' attorneys of record, appeared at the hearing.[1]  However, neither Caughron nor McCue took any position at the hearing other than McCue to state that he agreed with Debtors' testimony and Caughron, who stated that while he might not necessarily agree with every statement made by Debtors, he was nevertheless making the professional decision that it was best to decline any comment.  This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law and for the reasons stated herein, the Court finds in favor of Century 21.

This case was commenced under Chapter 13 of the Bankruptcy Code on August 15, 2005, and Debtors' petition was accompanied by a Chapter 13 Plan.  Debtors' 341(a) meeting of creditors was held September 6, 2005.  Debtors subsequently filed an Amended Chapter 13 Plan on September 27, 2005, and filed a Second Amended Chapter 13 Plan on October 12, 2005. Debtors' Second Amended Chapter 13 Plan was confirmed by Order entered October 31, 2005.

Thereafter, the Chapter 13 Trustee filed a Complaint against Century 21 on August 10, 2006.  The Trustee's adversarial complaint prompted counsel for Century 21 to file on January 17, 2007: (1) a Retroactive Application to Approve Employment of Professionals Century 21 Heritage Realty, Inc., Christie Killeen, Ann Ford, and Cindy Stevick; (2) a Retroactive Application for Professional Fees and Costs; and (3) a Motion to Allow Post Petition Priority Administrative Expense Claim, and to Require Debtors to Amend Chapter 13 Plan.  Debtors, through Caughron, filed a consent to Century 21's Application to Approve Employment of Professionals and Retroactive Application for Professional Fees and Costs.  However, Debtors

---

[1]  Both Caughron and McCue filed Motions to Withdraw on July 9, 2007, on the basis that Debtors had given Caughron and McCue notice that Debtors wished to terminate Caughron's and McCue's representation of Debtors in this bankruptcy case.  Although McCue's Motion was not signed, both Caughron and McCue filed Amended Motions to Withdraw on July 9, 2007.

opposed the Motion to Allow Post Petition Priority Administrative Expense Claim, and to

Require Debtors to Amend Chapter 13 Plan on the basis that "[t]here is no room for an

amendment that would increase funding under the Plan." Debtors were also unclear why Century

21 would be entitled to a priority claim. Debtors' opposition to the Motion to Allow Post

Petition Priority Administrative Expense Claim, and to Require Debtors to Amend Chapter 13

Plan set the matter for hearing.

In contrast, the Trustee filed mere responses to Century 21's Retroactive Application to

Approve Employment of Professional and Retroactive Application for Professional Fees and

Costs, and filed a consent to Century 21's Motion to Allow Post Petition Priority Administrative

Expense Claim, and to Require Debtors to Amend Chapter 13 Plan. Given the responses filed by

the Trustee and Debtors, the Court entered an Order on February 2, 2007, setting Century 21's

Application to Approve Employment of Professional and Century 21's Retroactive Application

for Professional Fees and Costs for hearing.

On March 2, 2007, prior to the hearing, Debtors filed a Motion to convert Debtors'

Chapter 13 bankruptcy to Chapter 7 of the Bankruptcy Code. Debtors' Motion was granted and

consequently, at the hearing held March 6, 2007, the Court denied Century 21's motion and

applications on the basis they were moot. The Court's March 6, 2007, hearing Order reads in

relevant part:

> At the hearing, the parties indicated that the above facts were not in
> dispute. In other words, Debtors' property was sold without authorization from
> this Court, and Century 21 Heritage Realty, Inc., Christie Killeen, Ann Ford, and
> Cindy Stevick received a real estate commission from the sale of Debtors' home,
> without authorization from this Court. The above events and Debtor's counsel's
> omissions, or commissions, during such events are egregious. Debtors' counsel
> attempted to explain his failure to seek approval to sell Debtors' home or to
> seek approval for payment of the real estate fees by stating that this case was a bit

3

confusing because one of the Debtors had signed the listing agreement prior to Debtors' petition date while the other signed immediately after the petition date. Debtors' home sold immediately.

Counsel also suggested during the hearing that the sale of Debtors' home was discussed with the Chapter 13 Trustee during Debtors' § 341(a) Meeting of Creditors. The Trustee did not affirm counsel's statement concerning the discussion of the sale of Debtors' home during the § 341(a) Meeting of Creditors and the Court has no evidentiary verification of such discussion.

Counsel's unpersuasive statements completely fail to explain, in any fashion, why Debtors have made no effort to file a motion to sell property, or amend their Chapter 13 Plan to reflect such sale, even though the sale occurred over 18 months ago. Nevertheless, in an effort to give Debtors' counsel the benefit of the doubt, the Court reviewed the various pleadings and attachments filed in this case and found that the "Relationships in Real Estate Transactions (Combined Explanation and Disclosure)" was apparently signed by Debtors on August 5, 2005, and Debtor Mary Stevens signed page 3 of 3 of a Standard Listing Contract on August 4, 2005. However, page 2 of 3 of the same Standard Listing Contract contains handwritten notations that were initialed by Debtor Mary Stevens on August 17, 2005. While Debtor Mary Stevens may have had the papers in her possession, and signed some of the papers prior to Debtors' petition date, the attachments to the Motions establish that Debtors did not enter into a listing contract with Century 21 until after their petition date. In particular, the Affidavit of Christie Killeen recites that "[o]n August 16, 2005, debtors executed a Standard Listing Agreement with Century 21, and executed other documents necessary for establishing the contractual relationship with Century 21, and for selling their home." As further explained in Christie Killeen's Affidavit, Debtors sold their home on September 1, 2005.

Notwithstanding the foregoing, Debtors filed a "Notice of Conversion to Chapter 7" on March 2, 2007, which Notice was approved by Order entered that same date. The conversion of this case moots the pending motions filed by attorney Timothy C. Fox on behalf of Century 21 Heritage Realty, Inc., Christie Killeen, Ann Ford, and Cindy Stevick. It is now up to the newly appointed Chapter 7 Trustee to review the proceedings in this case and determine what action should be taken. The Court would note, however, that it would certainly be inclined to consider the instructive result reflected in the unpublished decision of the Bankruptcy Appellate Panel of the Ninth Circuit in *Seidlitz v. Alwerdt (In re Alwerdt)*, BAP No. MT-05-1327 (March 10, 2006) should any future dispute arise over fees that may be owing to Century 21 Heritage Realty, Inc., Christie Killeen, Ann Ford, and Cindy Stevick, and who should be responsible for the payment of such fees, *i.e.*, the most culpable person and not the least culpable person.

As previously noted, Century 21 refiled its instant applications on May 24, 2007. On

4

June 4, 2007, Caughron, on behalf of Debtors, filed a "Response to Second Retroactive Application to Approve Employment of Professionals Century 21 Heritage Realty, Inc., Christie Killeen, Ann Ford, and Cindy Steick [sic]", setting the matter for hearing on July 10, 2007.  On the following day, Caughron filed another "Response to Second Retroactive Application to Approve Employment of Professionals Century 21 Heritage Realty, Inc., Christie Killeen, Ann Ford, and Cindy Steick [sic]", again setting the matter for hearing on July 10, 2007.  Also on June 5, 2007, Caughron filed a "Response to Second Application for Compensation", setting that matter for hearing on July 10, 2007.  All three of the aforementioned responses filed by Caughron are one sentence in length.  The responses set the matters for hearing, but set forth no legal or factual basis for a hearing.  The Chapter 7 Trustee filed consents to Century 21's Second Retroactive Application to Approve Employment of Professionals and Century 21's Second Retroactive Application for Professional Fees and Costs.

The foregoing motions, applications and responses have been filed because Debtors sold their home postpetition, but, to date, have failed to seek employment of their realtor, and have also failed to seek approval of the realtor's commission, which was paid to Century 21 at the time of closing.  Mary testified that she had previously worked with an individual named Carolyn Hamilton ("Carolyn"), who is now Caughron's paralegal.  When Debtors began experiencing financial difficulties, Mary called Carolyn and made arrangements to meet with Caughron.  Richard and Mary both testified that they met with Caughron in the spring of 2005, and thought more specifically that they had met with Caughron in March of 2005.  At that time, Debtors discussed with Caughron the possibility of selling their home and moving.

Following the meeting with Caughron, Debtors contacted Ann Ford ("Ford"), a real estate

professional that Debtors knew through prior real estate transactions. Debtors asked Ford to give a valuation estimate on their home for purposes of a potential bankruptcy filing. After various conversations, it appears that Ford told Debtors that she had a person who was interested in buying Debtors' home, and inquired as to whether Century 21 could do a one-time showing of Debtors' home. At that time, Mary had moved to Utah, where she had secured employment.

Mary proceeded to contact Carolyn to see if it was okay for Debtors to sell their home. Mary believed, following her discussion or discussions with Carolyn, that Carolyn had discussed the matter with Caughron because Mary was told that according to Caughron, it was okay to list Debtors' home for sale but that Debtors could not sell their home until after their bankruptcy petition was filed.[2] Debtors proceeded to inform Ford that they were agreeable to selling their home. Ford then put Debtors in contact with Christy Killeen ("Killeen"), another real estate professional at Century 21. Someone at Century 21, presumably Killeen, presented Debtors with a Standard Listing Contract and a Buy-Sell Agreement. The original Listing Agreement called for a 6% sales commission, but Debtors requested that Century 21 accept a reduced flat rate sales commission of $5,000.00. Century 21 accepted Debtors' proposal, and Mary signed the Listing Agreement on August 4, 2005. Richard, however, was under the mistaken belief that Debtors could not sign the Listing Agreement until after their bankruptcy petition was filed. Richard thus telephoned Caughron's office on August 16, 2005, and learned that Debtors' bankruptcy petition had been filed the previous day. Consequently, Richard did not sign the Listing Agreement until August 16, 2005, the day after Debtors' bankruptcy petition was filed.

---

[2] Caughron, or someone in his office, may be unaware of either MONT. CODE ANN. ("MCA") §§ 70-32-213 or 70-32-216, which allow debtors a homestead exemption in the proceeds from the sale of a homestead property for a period of 18 months.

Debtors proceeded to again confer with Caughron's office to confirm that it was now okay to accept the offer on their home. Caughron's office advised Debtors that it was okay to sell their home and that all Debtors needed to do was bring all documents relating to the sale of their home to the 341(a) meeting of creditors scheduled for September 6, 2005. Caughron's office also advised Debtors that they needed to pay $2,000.00 of the sales proceeds to the Chapter 13 Trustee, and that Debtors could do as they pleased with the remainder of the funds, which, according to passing comments made by Debtors, appear to have been roughly $9,000.00. The sale of Debtors' home closed on or about September 1, 2005.

On or around the date of Debtors' 341(a) meeting of creditors, Debtors supplied the Trustee with copies of the documents relating to the sale of Debtors' home. Following the 341(a) meeting of creditor held September 6, 2005, this case rambled along without incident until the Trustee filed an Adversary Proceeding against Century 21 seeking the turnover of the $5,000.00 sales commission that Century 21 had received from the unauthorized postpetition sale of Debtors' home.

The original Chapter 13 Plan filed by Debtors on August 15, 2005, provides that Debtors would pay the Trustee a lump sum payment of $2,000 in month 3. That same plan provides that American Federal would be treated in an unimpaired fashion, and that American Federal would retain its lien on Lots 10 and 11 of Block 2, Valley Heights Subdivision. Debtors' Amended Chapter 13 Plan filed September 27, 2005, provides for the same lump sum payment of $2,000 in month 3, but deletes all reference to American Federal. Debtors' Second Amended Chapter 13 Plan filed October 12, 2005, is substantially similar to Debtors' Amended Chapter 13 Plan in that the Second Amended Chapter 13 Plan provides for a $2,000.00 lump sum payment in month 3

7

and contains no reference whatsoever to American Federal. The $2,000.00 lump sum payment referenced in the plans filed August 15, 2005, September 27, 2005, and October 12, 2005, corresponds to the amount that Caughron's office told Debtors they would need to pay the Trustee from the sales proceeds.

The above facts are problematic in several respects. First, Caughron's June 4, 2007, and June 5, 2007, responses to Century 21's Second Retroactive Application to Approve Employment of Professionals and Century 21's Second Retroactive Application for Professional Fees and Costs, are each one sentence long and do nothing more than set Century 21's applications for hearing. The responses filed by Caughron are completely devoid of any factual or legal basis. Caughron is obviously unfamiliar with Mont. LBR 9013-1(e), which reads in part and has been in effect since December 1, 2001:

> Any response must state with specificity the grounds for any and all objections, including citation to applicable statutes and case law[.]

Additionally, Caughron failed to confer with Debtors before filing such responses, and as will be discussed later, such responses were self-serving on the part of Caughron and were contrary to Debtors' wishes.

Second, the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") explained in an unpublished opinion stemming from a Memorandum of Decision and Order previously entered by this Court on July 6, 2005, in *In re Alwerdt*, Case No. 03-62701, that "[a]lthough the Bankruptcy Code does not authorize retroactive employment, *In re Emco Enter., Inc.*, 94 B.R. 184, 187-88 (Bankr. E.D.Cal. 1988), retroactive compensation is permissible." *Seidlitz v. Alwerdt (In re Alwerdt),* (9th Cir. BAP 2006), reflected in Case No. 03-62701 at docket

8

entry number 67.  In light of the BAP's instruction, as set forth in *Alwerdt*, the Court denied

Century 21's Second Retroactive Application to Approve Employment of Professionals at the

hearing.

As for the Second Retroactive Application for Professional Fees and Costs, the Chapter 7

Trustee and Debtors agree that Century 21's services provided a benefit to the estate and that

Century 21 should be entitled to keep its $5,000 sales commission.  The Court would similarly

agree that Century 21 is entitled to a fee for its services.  As explained by the BAP in *Alwerdt*,

bankruptcy courts "possess the equitable power to permit retroactive compensation of a

professional's valuable but unauthorized services" where the professional seeking retroactive

compensation: "(1) satisfactorily explain[s] their failure to receive prior judicial approval; and (2)

demonstrate[s] their services benefitted the bankruptcy estate in a significant manner."

The Court concludes that Century 21's services benefitted the bankruptcy estate.  The sole

question is thus whether Century 21 satisfactorily explained its failure to receive prior judicial

approval of its employment and its fee request.  The testimony from the hearing shows that

Century 21 was aware that Debtors were contemplating filing for protection under the

Bankruptcy Code, and Century 21 may have even had knowledge shortly after Debtors' petition

date that Debtors' bankruptcy petition had indeed been filed.  Century 21, however, specializes in

the marketing and selling of real estate, and not bankruptcy law.  Thus, the Court finds that

Century 21 has adequately explained why it did not file appropriate applications at or near the

time this case was filed and indeed, the Court sees no reason to punish Century 21 for

Caughron's or McCue's dereliction of their duties

Having determined that Century 21 is entitled to retroactive compensation for its

unauthorized services, the question is now who is ultimately liable for payment of Century 21's unauthorized postpetition fee. Caughron regularly appears in bankruptcy proceedings before this Court and has, on numerous occasions, touted himself as a sophisticated bankruptcy attorney and has represented that he is certified in consumer bankruptcy by a national bankruptcy certifying organization. Caughron knew that Debtors had sold their home. Such fact is evident not only from Debtors' undisputed and credible testimony, but also from the fact that Caughron filed three plans on behalf of these Debtors, each of which provided for the lump sum payment of $2,000.00, which is the amount that Debtors were to pay the Trustee from the proceeds from the sale of their home. Caughron, having knowledge that Debtors sold their home postpetition – from the closing documents supplied to Caughron by Debtors – knew or should have known that it was incumbent upon him to seek proper employment of Century 21 and obtain authorization from the Court for the postpetition payment of Century 21's commission. Caughron did neither of the above despite having ample opportunity to do so over the past 22 months. Following the directive of *Alwerdt*, the Court finds that Caughron is the most culpable person in this case, and as a consequence, the fee of $5,000.00 that Century 21 has already earned should be paid by Caughron. Because Century 21 has already improperly received its fee from the bankruptcy estate at the time of the closing, the Court directs that Caughron immediately remit the sum of $5,000.00 to the bankruptcy trustee.

In addition to paying Century 21's $5,000.00 sales commission, the Court also finds that Caughron should be sanctioned. Debtors testified that they did not oppose either of the applications filed by Century 21 and indeed, on January 29, 2007, had filed consents to the same applications previously filed by Century 21 in January of 2007. The Court is thus left to ponder

10

why Caughron filed the responses on behalf of these Debtors and set the matters for hearing.

A Bankruptcy Court has the authority, under Bankruptcy Rule 9011, to impose sanctions on any party or attorney who, *inter alia,* signs, or later advocates, a document that is interposed for an improper purpose.  FED. R. BANKR.P. 9011.  Because no substantive difference exists between Rule 9011 and Rule 11 of the Federal Rules of Civil Procedure, the law, which has developed under Rule 11 is equally applicable in interpreting and applying its bankruptcy counterpart.  This Court construed Rule 9011 in *In re Morrow*, 17 Mont. B.R. 183, 189-90 (Bankr. D. Mont. 1998), where the Court noted that courts interpreting Rule 9011 rely on cases involving Rule 11, citing *Wolf v. Kupetz*, 118 B.R. 761, 767 (Bankr. C.D. Cal. 1990).  *See also, In re DeVille*, 361 F.3d 539, 552 (9th Cir. 2004) ("Subsequent to the amendments to Rule 11 and Rule 9011, we have continued to adhere to the practice that precedents interpreting Rule 11 may prove a helpful guide to our interpretation of Rule 9011.")  Rule 9011(b) provides that by presenting a signed paper an attorney or unrepresented party is certifying that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, is specifically so identified, are reasonably based on a lack of information or belief.

A case stemming from a bankruptcy case in Arizona provides an instructive distillation of the application of Rule 9011:

> Former *Fed.R.Civ.P.* 11 and [FRBP] 9011 have been interpreted by the Ninth Circuit in *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358 (9th Cir.1990), and *In re Marsch,* 36 F.3d 825 (9th Cir.1994). These interpretations differ.

### 1. Townsend v. Holman Consulting Corp.

In the *Townsend* decision, Patrick Townsend sued the employee benefit plan of his employer for payment of certain medical benefits. *Id.* at 1361. Townsend listed numerous defendants including Wilson & Reitman (hereinafter "Wilson"), a law partnership. Wilson moved for dismissal of the complaint as to it and requested Rule 11 sanctions. The motion to dismiss included two affidavits which reflected that Wilson had no role "in the adoption, implementation or administration of the [Employee Benefit] Plan." Townsend did not offer rebuttal evidence and subsequently filed an amended complaint. *Id.*

The court dismissed the complaint as to Wilson, gave Townsend leave to file a second amended complaint except as against Wilson, and imposed sanctions based upon the factual findings that Townsend's counsel failed to do a reasonable investigation, that the pleading was filed without an adequate basis in law or fact, and that the pleading was filed with an improper purpose of harassment. Townsend's counsel filed a motion for reconsideration, and counsel was assessed additional sanctions on the grounds that the motion for reconsideration was frivolous. The Court of Appeals reversed both awards of sanctions and then granted a rehearing. *Id.*

In its decision, the Ninth Circuit stated that although the frivolous filings and improper purpose prongs were separate and distinct, they did tend to overlap. The Ninth Circuit then stated that before sanctions could be imposed for a pleading that was filed for an improper purpose, the trial court must also determine that the pleading was frivolous. *Id.* The Ninth Circuit blended its analysis under the two separate prongs of Rule 11.

### 2. In re Marsch

The Ninth Circuit decision of *In re Marsch,* 36 F.3d 825, 829 (9th Cir.1994) distinguished between the two prongs of RBP 9011 and concluded that either prong might be a basis for sanctions. *Id.* The first prong was that the signer certified that the pleading was not frivolous, and the second prong was that the signer ensured that the pleading/paper was not filed for an improper purpose. *Id.*

The *Marsch* court further noted that in the bankruptcy context,

> we accept Townsend's basic teaching, which is that frivolousness and improper purpose are not wholly independent considerations but "will often overlap." [cite omitted] We thus adopt an interpretation of Bankruptcy Rule 9011 that differs somewhat from Townsend's interpretation of FRCP 11, but one we believe is more faithful to Rule 9011's language and more consistent with the realities of bankruptcy practice. We conclude that bankruptcy courts must consider both frivolousness and improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other.

> *Id.* at 830. The *Marsch* court determined that the debtor filed a bankruptcy petition for reasons which were not wholly frivolous, but were of dubious legal merit. *Id.* The *Marsch* court concluded that the petition was filed to delay collection of a judgment and to avoid the posting of the appeal bond and that this combined with a "flimsy legal basis" for the filing of the petition created a "robust" showing of improper purpose. *Id.* at 831. Thus, [FRBP] 9011 sanctions were appropriate. *Id.* The *Marsch* court then determined that the award of "attorney's fees and costs incurred by the appellant in fighting the petition" were the appropriate amount of sanctions. *Id.*

*In re Soll,* 181 B.R. 433, 447 -448 (Bankr. D.Ariz. 1995).

Caughron obviously did not perform any inquiry, reasonable or otherwise, with respect to Century 21's applications and this Court cannot understand any reason why Caughron set these matters for hearing when he called no witnesses at the hearing and made no comments, other than to state that he had no comment.  Moreover, Caughron has provided no explanation for his failure to file applications to employ Century 21, and for approval of its fee, when it is plainly evident that Caughron knew that Debtors had sold their home postpetition.  Given the complete dereliction of duties, this Court is of the firm belief that Caughron's actions must be sanctioned and the appropriate sanction is to require Caughron to compensate Century 21 for the fees and costs it has paid its attorney to file and defend the Second Retroactive Application for

13

Professional Fees and Costs filed on May 24, 2007.

The Court would note that it has wide latitude in imposing sanctions. A decision to sanction an attorney is one of the most grievous duties of a judge. *In re Wenk*, 296 B.R. 719, 728 (Bankr. E.D.Va. 2002). But "the integrity of the judicial process . . . depends to a large extent on the veracity and integrity of the attorneys who practice before it[, and] [a]bsent the trust those virtues inspire, the system cannot function." *Wenk*, 296 B.R. at 727.

As the Supreme Court has explained, "[t]he main objective of [Rule 11] is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991). In the context of bankruptcy proceedings, Rule 9011 has been used to sanction the unwarranted opposition to an obviously meritorious claim for relief. *See In re Saltenberger*, 61 B.R. 1005 (Bankr. E.D.Pa. 1986). As explained by another court, "[t]he best way to control unjustified tactics in litigation is to ensure that those who create costs also bear them." *In re TCI Ltd.,* 769 F.2d 441, 446 (7th Cir. 1985). In case *sub judice*, Caughron has clearly abused the bankruptcy process in that Caughron's responses to Century 21's second applications were absolutely baseless. Caughron's actions were not reasonable, proper or professional.

In addition to monetary sanctions, the Court would also reiterate that attorney suspension is contemplated by Mont. LBR 2090-4, and is within this Court's discretion as noted in *Wenk* and cases cited therein, for Caughron's violation of Rule 9011. *Wenk*, 296 B.R. at 725-26. This Court concludes that suspension is not appropriate at this time. However, unless Caughron improves his performance in conforming to the Rules, suspension may follow upon proper notice

14

and procedure.  In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED:

1.  Century 21's Second Retroactive Application to Approve Employment of Professionals Century 21 Heritage Realty, Inc., Christie Killeen, Ann Ford and Cindy Stevick filed by Century 21 on May 24, 2007, is DENIED;

2.  Century 21's Second Retroactive Application for Professional Fees and Costs filed on May 24, 2007, is GRANTED; and R. Clifton Caughron, as the professional responsible for seeking the timely appointment of Century 21 and for seeking the timely approval of Century 21's sales commission, is the most culpable person, and is thus the person responsible for paying such fee.  As such, R. Clifton Caughron shall have ten (10) days from the date of this Order to remit the sum of $5,000.00 to the Chapter 7 Trustee; and

3.  Counsel for Century 21 shall have ten (10) days from the date of this Order to file an Affidavit of the fees and costs associated with filing the Second Retroactive Application for Professional Fees and Costs filed by Century 21, and for defending such application following Caughron's baseless responses; and Caughron shall have ten (10) days thereafter to file a response to Century 21's Affidavit of Fees and Costs and set the matter for hearing and to request a hearing pursuant to Rule 9011(c), if he disputes this Court's sanctions, as they relate to the payment of fees incurred by Century 21, for the services rendered by its attorney.  The absence of any timely response to Century 21's Affidavit of fees and costs by Caughron will be deemed an admission by Caughron that the fees and costs asserted by Century 21 are reasonable and will be a further admission that assessment of such fees and costs is an appropriate sanction in this case.

15

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana